Good afternoon, Illinois Appellate Court. First District Court is now in session. The First Division, the Honorable Justice Michael B. Hyman presiding, case number 19-0569, People v. Leroy Willis. Good afternoon. My name is Justice Michael Hyman. With me is Justice Aurelia Pucheski and Justice Carl Anthony Walker. We're going to conduct this as if we were in the courtroom. Each side has 20 minutes. Appellant, you can reserve some time, whatever you wish, for rebuttal. And we will interrupt you and then please finish your thought. And then if you would answer our questions, we would appreciate it. So will you please, each of you, introduce yourself and how much time you want for rebuttal. Sure, Your Honor. I'm Jennifer Bonshiger from the State Appellate Defender for Leroy Willis. I'd like to reserve maybe three minutes for rebuttal. If that's okay. Sure. Good afternoon, Your Honors. Assistant State's Attorney Omar El-Hindi on behalf of the people. Okay, thank you very much. Mrs. Bonshiger, go ahead. Certainly. Good afternoon, Your Honors, and may it please the Court. Again, I'm Jennifer Bonshiger from Leroy Willis. We raised two issues in the briefs and I had planned to focus today just on the first of those two issues, but of course I'm here for your questions on either of those issues. But to that first issue, Your Honors, on the date set for the hearing on the motion for a new trial, Leroy Willis told the judge that he wanted to fire his attorney. We know the facts. We've read the briefs, we've reviewed the record, so we're well aware of the facts. What is your best argument as to why we should reverse on that first issue? What's your argument? I mean, of all the things you say, what would you say is the one that really brings it home? I think it's Mr. Willis' own words when he says specifically, I want him fired and I don't want him to speak or do nothing for me when he's referring to his appointed counsel. The judge failed to ask a critical question, which is, did Mr. Willis want to represent himself, which he has a fundamental right to do at a new and critical stage of the proceedings, or was he looking for a new attorney? And when she failed to ask that question. But the state argues that he was really just complaining about trial errors and that he was speaking of his attorney sort of in the past tense. So would you want to respond to that? Right. I think that I think the record rebuts that assertion. He speaks in the present tense repeatedly. He says, I want him fired. I want excuse me. He said that pre-trial too, right? Not just post-trial. He did at a pre-trial hearing also ask to represent himself. There were questions at that pre-trial hearing about whether he was fit enough, sufficiently fit to represent himself. No, the judge didn't ask him both through the litany of questions about whether he was fit to represent himself. The judge ordered a behavioral exam, right? And that made that fit for trial. But I didn't see the judge asking him, you know, where were you in school, blah, blah, blah, all those questions that you asked. None of that. No, that's correct. She didn't do any of that then either. But back to Justice Walker's question, you know, Mr. Willis is speaking in the present tense. And while he was also making complaints about counsel, whether he's making complaints about what happened at trial, a crankle type situation, self-representation is a different issue. And he again, at another subsequent hearing, he again said, you didn't let me represent myself. And so I think the record refutes any attempt to brush this away. Well, now the trial judge actually made, it appears to have made a finding at some point though, that he had been asking this over and over again, but he never really chose to fire his counsel. So the trial court thought that it was another song and dance and that he really, he really was not asking to fire his attorney. He was just kind of complaining about him and he never, he had opportunities to say, I want him fired and didn't do it. Do you want to respond to that? Well, again, I mean, the record clearly has Mr. Willis saying, I want present tense him fired. I don't want him to speak or do nothing for me, present tense. The judge herself acknowledged that while she said that he was complaining about counsel, she said in the record that quote, he said again, that he wanted to fire his attorney, but she didn't engage with that request to fire his attorney and confirm, are you looking to represent yourself, which would then signal the 401A admonitions that the judge should have done, but should have done, but never did. Now the state goes on though, to argue that his request to people be spanned case where the court specifically says the defendant must make an articulate and unmistakable demand for self-representation. I'm not saying I agree with what that panel says, but they said you need to be articulate. I'm not sure how he could be more articulate than saying I want him fired, your honor. That's, that's pretty clear and articulate. There's nothing equivocal about that. I want him fired. I don't want him to speak or do nothing for me, no exceptions. So, and he was consistent about that from the pre-trial stage all the way through the post-trial motion for a new trial. I'm not quite sure what you mean about consistent. I mean, he did in the pre-trial. He said, I don't, I want to fire this attorney and post-trial. He said, I want to fire this attorney and then the judge never asked him the questions that are needed to find out whether or not he could represent himself or in fact wanted to represent himself. So there's like a missing piece, right? Exactly, your honor. Yes. And that, that, so the judge essentially deprived him of his fundamental right to represent himself for resulting in a structural error that per se requires reversal for new post-trial proceedings. You keep saying that he said at the hearing on the motion for a new trial, I want to fire him. I don't want him to speak or do nothing for me. Yes. Is it, I, did he say I want, or I wanted? He said, I want. I want. Before that he had been speaking about some complaints about counsel and he said, I've constantly been telling you I wanted him fired. Then he switched to present tense saying, I want him fired. I want him fired. So again, I don't, I don't think he could have been, unless he was going to use the magic words, I want to go pro se. And there are no cases that require a magic words approach to this kind of of request. He said he wanted to fire his attorney that triggered the judge's responsibility to make the 401A inquiries. And then if, and then to allow him, if she determined that he was able to make a knowing and intelligent waiver of his right to counsel, she was that, you know then she had to let him represent himself at those, at those post-trial hearings. I'm looking at the transcript. It could be wrong, but as I have it, he said, I wanted to fire him. I don't want him to speak or do nothing for me. That's why I asked the question. You say, he said, I want to fire him. Not that I wanted to fire him. So I just want to make sure that if that's your position is that the word he used was past tense. I wanted to fire him. Well, but pre-trial, he said he wanted, he, I want to, it's present tense. I want to fire him. I don't want him. That was at the pre-trial hearing. That's pretty consistent. Yes. And I do, I mean, I have, sorry, your honor, I'm trying to find it in the transcripts. This is at the, what I'm reading from is a January 22nd, 2019 hearing. Yes. Right. No. He was talking about. But while you're looking for that counsel, you don't approve it. Once having heard, I want him fired. I wanted him fired. I don't want him to start doing anything for me. The judge has an obligation to go forward and ask some questions. Absolutely. That's where rule 401A kicks in, okay. And that did not happen. Correct. That did not happen at all. With regard to my question, whether it's wanted or what doesn't make a difference. I don't think so because he again goes on to say in the present tense, I don't want him to speak or do nothing for me. He's using the present tense there as well. At the subsequent hearing to this, he complains that the judge didn't let him represent himself at that hearing. So what are you saying the judge did wrong? She failed to engage with his request to represent himself. Or at the very least, if she was confused about that, she failed to clarify. She failed to ask the question. Are you looking to represent yourself? Do you want to go per se, or are you looking for a different attorney? Because that's a different thing. The judge doesn't seem confused. You said that if she's confused, but just as you constantly wanted to fire your attorney, that has been said many times. So she's aware of it, but chose not to. I'm so sorry, your honor. She went on to say, he said again that he wanted to fire his attorney. Present tense again. I have him using the present tense. I want him fired. And then I don't want him to speak or do nothing for me. That is more than enough to trigger rule 401A admonitions to confirm that he wants to represent himself. And the judge's failure to do that deprived him of that fundamental right to represent himself at the post-trial motion hearing. Free trial too. We didn't raise it as an error for the pretrial hearing because it did seem like there was some question of his fitness and he was speaking some nonsense at that hearing. We've raised it only for the post-trial hearing and we're seeking only new post-trial proceedings for Mr. Willis. Unless your honors have other questions, I'm happy to see the rest of my time and reserve it for rebuttal. Any other questions? No. Thank you very much. Please proceed. Thank you, your honors. For the record, assistant state's attorney, Omar Al-Hindi, on behalf of the people, may it please the court. Your honor, in response to Ms. Bontrager's focus on the first issue, I too will also focus on the first issue in which the defendant failed to make an unambiguous and unmistakable demand to proceed pro se. Mr. Al-Hindi, how could we have said it differently? Your honor, if I may quote. He said, I want to fire my attorney. So give us a suggestion as to how he should have said it so that it would be, quote unquote, articulate. Yes, your honor. The defendant did say, I've been constantly asking you, I want him fired. I want him fired. And he's referring to his December, 2017 pre-trial statements of I'm going to fire him. I don't want him presenting me. That is directly quoted from the record. In response to your question, you have to make, you as in the defendant have to make an unmistakable and unambiguous demand to proceed pro se. What would be unambiguous would be something along the lines of, I don't want him to represent me. Even quoting Ms. Bontrager, I don't want him to speak for me or do nothing for me, no exceptions. And then he has to take the next step. I want to represent myself. He doesn't have to say the magic words of I want to proceed pro se. No one would expect that from a non-law school defendant to know those exact words, but he does need to make an unmistakable demand to represent himself. And he did not make that request, your honor. So you believe that based on, I'm sorry, Justice Petito, you can go ahead. The judge didn't ask him any of the questions that she was supposed to ask him. Your honor, with respect to what the judge should or should not have done, I would say that the judge's responsibility is to make a determination if the defendant can make a knowing and intelligent waiver of the right to counsel. And so we have two points where she did do that. In December, 2017, she did that when she asked, quote, you've given me a lot of information, but one of them is that you are currently receiving medications and you've also asked to not be represented by the public defender. That's a direct quote from what Judge Reddick said. Afterwards, she determined that a fitness evaluation needed to have been done based on her determination implicitly that the defendant was unable to make a knowing and intelligent waiver. And then she asked for the fitness evaluation and the entire year of 2018 between the pre-trial request of I'm going to fire him in December 2017 and the January 2019, which is really at issue at the post-trial stage. Never once throughout entire 2018 at the trial stage made any mention of ineffectiveness issues. I don't like my attorney, nothing, not until the conviction. But it seems to me you're trying to combine apples and oranges. The trial's over, right? What we're looking at now is post-trial, the sentencing. Counsel said what she's looking for is at sentencing, right? That's what we're looking at. He had a lawyer at trial, we know that. I mean, that's done. So for you to go back and say what happened before, I don't see any relevance whatsoever. He did ask at that time and there was an evaluation and they went ahead, okay? But now we have to look at this juncture. We are now three, two, three years later and he said, you know, he's kind of, he's panic, right? I don't want this guy speaking for me. What, you know, Judge Walker's questions are a very good one in that what more could a non-lawyer, someone who does not know the law and doesn't have to make any magic words, what more could he have done? It may not be articulate. It may not be articulate. I mean, this whole thing about being articulate is bothersome, but you go ahead, Justice Hyndman, I'm sorry. My question is, you don't agree that we should be looking at what happened at the post-trial rather than any, I don't see any relevance. What's the relevance of the pretrial? I don't understand. No, Your Honor, I understand your point. With respect to that, I would say we could only focus on the post-trial statements. The only reason I brought up the at the post-trial state, I've been constantly asking you, I want him fired. Well, you have to think when is he, what is he referring to exactly? Referring back to December 27th. I appreciate that. I appreciate you're answering that question. I appreciate it. I really do. But so, okay. So just, but you're right. I mean, I think we need to look at what's going on here and he does refer back. So I understand your point. That's a good point. But when you look at what he's doing now, in my mind, what we need to consider is what obligation does a judge have when this is raised? This isn't like, as you just noted, it's not right for the first time. So she has had a history and she even recognizes it in her, what she said, the judge of knowing what he's been wanting to do. And now he says, I don't want him to speak or do nothing for me. No exceptions. Isn't there, are you saying that the judge has no obligation then to ask any questions? Can just ignore what has been stated? No, your honor, you cannot ignore what has been stated. And the judge respectfully did not ignore. She stated he constantly wanted to fire his attorney. That has been said many times, but he chose not to. But that's not what he said. But he says, I don't want him to speak and do nothing for me. No exceptions. I want to fire him. I don't want him to speak. I mean, again, we're not talking, he knows the trials. Everybody knows the trials. And now he's got this lawyer back and he's through with it. He wants to or at least we got to find out. I mean, isn't there an obligation on the part of the judge? I mean, this is really to me, the next to the case before us. The issue is what responsibility does a judge have when that statement is made and her response doesn't ask him any question, doesn't ask him to clarify nothing. It's as if, okay, let's go on. Okay. You've said this before. Let's go on. Your honor, let's understand. We can concede that he unequivocally expressed dissatisfaction with Mr. Simmons, his attorney's performance. I think that is fairly clear. However, when he says, I've been constantly asking you, I want him fired. Someone begs the question, what's the next step? Does he want to obtain new counsel? Does he want private counsel? Does he want another public defender or what we're really here for today? Does he actually want to represent himself? And I would say the fact that we cannot definitively discern what he meant is the exact reason why his request isn't an unambiguous and unmistakable demand. I would say the opposite. It shows us because we can't figure it out and neither could the judge, because we're reading what the judge said and we're wondering, we're all looking at the same language. Okay. And we know the judge didn't ask any questions. So doesn't your argument actually support Mr. Willis' position? Well, your honor, the other portion of this is that it's a trial judge's responsibility in determining whether a defendant can make a knowing and intelligent waiver of the right to counsel to also keep proceedings moving in a non-obstructionist manner. Several courts have held that requests to proceed pro se made prior to trial, which I understand we're not here, are timely. However, the Burton court, our state Supreme court, had held that a pro se request after trial, specifically at sentencing, a post-trial stage, is untimely. And the Burton court even went on to say that the denial of request for self representation made, quote, after meaningful proceedings have been conducted, doesn't constitute reversible error. And I would say that a trial, the entire trial, the conviction being laid down, meaningful proceedings have already happened and we're at the post-trial stage. And so with the judge's responsibility to keep proceedings moving, she made an implicit determination that after speaking with Mr. Simmons, because the record even shows that she asks Mr. Simmons something to the effect of, and didn't he show you motions? He keeps mentioning motions that were presented that were not presented to the court. And Mr. Simmons responds with, we went over some pro se motions that he made, and I explained to him meticulously many, many times why those would be frivolous. You know, I hate to interrupt you, but the problem is that all of that was related to whether or not the judge felt that she needed to deal with an issue of ineffective assistance of counsel. All those questions you're talking about now, the questions the judge asked were directly related to that issue. This is a different issue on appeal right now. This is not regarding ineffective assistance of counsel. This is regarding the request that he wanted to fire his attorney, whether he's ineffective or not. At this point, post-trial, he wants to now fire him. He does not want him to speak for him. He does not want him to represent him. And he goes on to say no exception. He says that twice. I'm not sure what else he could have done to make it clear that he did not want the attorney to represent him in the post-trial proceedings. I understand your point, Your Honor. Our only response would be that I believe Judge Reddick made an implicit determination that because he was not making an unmistakable demand to proceed pro se, she was trying to determine what does he mean by wanting to fire his counsel. And when she determined that there were no issues of ineffectiveness, she implicitly determined that counsel should not have been relinquished. She's already determined that she can't figure out if he wants to represent himself or get another counsel. So where you're going with that, then, is that counsel should not be relinquished if the trial judge makes a finding that counsel was not ineffective, has not been ineffective, and that the trial judge believes counsel is doing a great job. It doesn't matter what the wish of the defendant is. Counsel should continue on. Even if the defendant is, he should be fired. That's where you're going with it. And if that's your position, that's fine. We just want to be clear that that's your position. Right. Also, earlier you said she wanted to move things along. Does that eliminate the need to do the 401 questions, moving things along? Is that more important? With response to Justice Pachinksi's question first, I would say no, no, that doesn't trump a defendant's constitutional right to self-representation. Just wanting to move proceedings along, absolutely not. That would not be our position. But with respect to what the judge did, I think when she said that has been said many times, but he chose not to and to proceed with the trial and that does not raise concerns for the court at this juncture, she was in her referring to how since he has not brought it back up until the conviction has been laid down, at this point she might be making an implicit determination that this might be some sort of obstructionist misconduct because she can't tell whether he wants to fire counsel and represent himself or fire counsel and get new counsel. And so our position is only that, although not explicitly on the record, although she did not specifically ask, and what do you want to do next, Mr. Willis? Do you want to represent yourself or do you want to retain new counsel? She did not ask that explicitly, but in our position, implicitly, she had ruled that it was not an unmistakable demand to proceed per se. And so she just moved forward with the post-trial proceedings. The other issue that we have is that what precedent or authority would allow her to make that implicit decision without asking him? I mean, we've already gone over that this is his right and it's an important right in our country and that it's post-trial, it's with sentencing, that's where we're at, that's what we're talking about. And why, if it's accepting that it was implicit, say that's what was done because we know there were no questions asked, there was no inquiry. So she doesn't know one way or the other, it would seem, but you're saying she's making this decision for him without asking any questions. Is that what gives her a right to do that without asking any questions? Well, not only Burton, but a case called People versus Rasho basically are focusing on the issue of timeliness in which these requests to proceed per se after meaningful proceedings have been done is untimely. And so the implicit portion of that comes in when she believed, from what I could tell from the record, that this request is coming after the trial is over, right before essentially sentencing. That, from what we could tell from the record, was slowing the proceedings down and in addition it was an unmistakable... He's in court before her on sentencing, right? What other opportunities does he have to do this post-trial? I mean, we're post-trial proceedings, so what opportunities does he have? He's not often before her, right? So, I mean, he's doing it as and as she said, you've done this a lot. I mean, doesn't now at this juncture, shouldn't the judge at least inquire rather than assume and make something and then what we think is implicit, we don't know. Well, she did inquire, to Justice Walker's point, into some sort of ineffectiveness issues and kind of began to go down this crankle pathway. That's a different issue. So, one doesn't have any effect on the other and right now we're talking about not ineffectiveness, we're talking about his right on sentencing to be on his own, if that's what he wants to do. And she has certain requirements that she has to meet and as long as he brings it up enough to make it say, you know, I don't, I want to fire him, I don't want him to speak or do anything for me, no exceptions. And you say the judge implicitly, I mean, where is the fairness in that under the law? Your Honor, in response, I would say you have to look towards what our state Supreme Court had laid down in Burton where they even quote say that given counsel's intimate and lengthy involvement in the case and quote the stage of the proceedings, the circuit court didn't abuse its discretion in requiring counsel's continued representation. The stage of the proceedings in Burton was sentencing. The stage of the proceedings here is also post-trial. It's not sentencing, but it is a post-trial motion for a new trial. And the state Supreme Court in Burton even cited to several other jurisdictions kind of imposing this implicit timeliness requirement, saying that pro se request made after meaningful proceedings after trial is concluded is untimely. So our position would just be that although she did not explicitly ask these sorts of questions of what do you mean by no exceptions? What do you mean by I don't want him to speak or do nothing for me? We concede she did not ask that and that's clear from the record, but what we would not concede is that she did not do her due diligence as a trial judge in making a determination of whether the defendant could waive the right to counsel and also whether he was making an unmistakable demand to proceed pro se. Is it your position that this is a discretionary call from the judge? I assume. The issue of whether he can have counsel at this juncture is a discretionary call? Yeah, yes, your honor. That would be at the post-trial stage. It is up to the judge to determine whether to allow. If it's a discretionary call, doesn't she have to exercise her discretion in some manner? And so my question is, how does she, if it's implicit, how has she exercised it without it communicating? Well, after the defendant made the claim of not wanting counsel to speak for him or do nothing for him, the court began to kind of go into some inquiries of like, they even asked the defendant, what is your issue? And the defendant began to ask him, I mean, the court began to ask the defendant several things about how he was complaining about his position in the courtroom and some other issues that he had made in a mention to this letter, this ex parte communication that the judge had mentioned. And so while she did not specifically ask, what does he mean by I don't want him to speak or do nothing for me? It's not like she completely cut him off and never followed up with him on what really is, for lack of a better word, what is his problem right now? She let him voice his concerns on the record of everything that defendant sent. So she did not exactly ask him about that specific question, but she didn't entirely ignore the defendant. Your honor, with respect to also the first issue, I would just want to address one case that was cited in the defendant's reply brief, people versus gray, which from the reply brief is cited for the proposition that a self-representation request made near the end of a post-conviction proceeding is timely. Our position is that the case wouldn't even apply here because the issue in gray was whether the defendant as a post-conviction petitioner has the right to go pro se. And the court went on to go on to some issues of the post-conviction hearing act, which established a statutory right to proceed pro se. And then the case really centered on whether the act created a statutory right to counsel, which the court said that did. And the court even stated then that we must indulge every reasonable presumption against the waiver of the right to counsel. And it even cited approvingly to people versus Woodson, which is in our brief, which also holds that self-representation requests are timely if made before trial. But again, our position would just be that gray is an applicable here, where it says that a request made towards the end of a post-conviction proceeding is timely because in a post-conviction proceeding, the evidentiary hearing that they have is the normal proceeding. And so gray's motion there was timely because it was filed before the evidentiary hearing, which would be like requesting to proceed pro se before trial begins. But that case was based upon the statutory right to be able to proceed pro se. Well, we're talking here about a constitutional right. So you're saying that that case doesn't carry as much force because it involved the statutory right versus the constitutional right? Yes, Your Honor. That is what you're saying? You don't think the constitutional right is a stronger right than the statutory right? No, no. I misunderstood your question, Your Honor. No, what I was just trying to say was in the reply brief, they mentioned it for the proposition that a self-representation request made near the end of a post-conviction proceeding is timely. And from that, you would- to differentiate between how that case focused on the statutory right, whereas this case is about a constitutional right. Right, and so you also have a constitutional right to represent yourself or to be represented by counsel. Yes. I'm not sure how that's a distinguishing factor. You're distinguishing that case based upon the fact- based upon the fact that it involved the statutory right and that here we're talking about a constitutional right, therefore the right here in this case, in the Willis case, is not as strong as the right in the case that counsel cited to in her reply. That's what you seem to be implying. I'm sorry, Your Honor, that is not what I meant. What I really just meant was to just distinguish how the case was mentioned in the reply brief and how it is seeming to come- it gives the impression that these pro se requests towards the end of, you know, at a post-conviction, that's obviously after you've been convicted at trial, that one says that it's okay, it's timely, but what we're trying to say right now is that that doesn't even apply here because that case specifically held that it is timely under the umbrella of the PCHA, the Post-Conviction Hearing Act, which has no bearing on our case right here because this is a constitutional case. Okay, and did you want to address the other issue, the sentencing issue, excessive sentence? Yes, Your Honor, if that would be all right. I really just wanted to touch base and mention that the court mentioned not two, as the defendant's brief mentioned, but three aggravating factors. The defendant's conduct caused or threatened serious harm, defendant had a history of criminal activity, and third, there was evidence that defendant's acts resulted by reason of the briefly defendant's brief states that the victim suffered minimal harm, and we would say our position is that this is inaccurate for two reasons, because the statutory aggravating factor in question applies whenever defendant's conduct, quote, threatens, and this is directly from the statute, threatens serious harm, which stabbing someone certainly can threaten serious harm, but it doesn't matter whether it threatens or not threaten serious harm because the Chicago that the knife could have hit major arteries, and the victim himself testified that he believed his wounds to be fatal when he testified, quote, I thought this guy just killed me. With respect to other defendants' argument where they say the court erred in considering his history as a matter of aggravation when it had already been accounted for in placing him in a class X sentencing range, we would just be, we would ask this court to look to cases such as People v. Thomas and Illinois State Supreme Court case in which they basically say it is allowed, and when you look at the defendant's criminal history with nearly 60 years collectively and previous sentences, and also considering a very point of aggravation, a very important point of aggravation that he was on mandatory supervised release when he committed this instant offense, then that shows that the defendant's conduct on parole shows little rehabilitative potential, which comes directly from People v. Jackson stating that how they act while they're on parole can exhibit little rehabilitative potential. And finally, with respect to the racial animus issue, defendant's argument in the reply brief states that racial animus shouldn't have served as an aggravator because the defendant was acquitted of that charge, which is true, he was acquitted. However, a trial court can't consider evidence of criminal conduct if the defendant had previously been acquitted of that conduct so long as quote the evidence presented is relevant and reliable. And here the evidence of racial motivation was relevant and reliable because the victim testified under oath to the defendant's statements and the court found him credible while finding the defendant's statements quote incredible and victim statement was corroborated by the officer's testimony that the defendant was shouting racial epithets when he had arrived. Your Honor, based on all of that, we would be asking you to affirm the defendant's conviction for an attempted armed robbery as well as his 28 year sentence. Now the and I'm not sure that the record supports this, but in the reply brief, the defense claims that this that the trial judge found in this case that there were there was no mitigating evidence. Do you agree with that? The trial court found that there was no mitigation here? Yes, Your Honor. Thank you for bringing that up. Actually, our response to that would be the judge. The quote stated when I look through this very lengthy list of factors and mitigation, I find none but to the contrary quote factors and aggravation. She was saying that I find no statutory mitigating factors, which is true. She found no statutory mitigating factors. If I could mention a couple of them from the statute on mitigation defendants, criminal conduct is a result of circumstances unlikely to recur. That's one of the statutory mitigating factors. Unfortunately, this defendant has several convictions for robbery in the past two for vehicular invasion, a previous armed robbery conviction that shows that his conduct was not the result of circumstances unlikely to recur. Another mitigating factor has had a law life for a substantial period of time. Unfortunately, this defendant has been arrested several times dating back to 1988. Finally, the other mitigate statutory mitigating factors that apply here was criminal conduct induced by someone other than the defendant. The defendant here was the sole perpetrator. Another one was didn't cause serious physical harm to another paramedic even stated that the injuries were critical. And finally, another mitigating statutory mitigating factor defendant likely to comply with terms of a period of probation. He was on mandatory supervised release when he committed this offense. So our position is the judge was correct when she stated I find no statutory mitigating factors. I know she didn't say statutory mitigating factors. She just said I find none. But that is still our that that that is correct. You want to close? Yes, Your Honor. Based on all the reasons stated today, as those stated in our brief, we ask you to affirm the defendant's conviction for attempted armed robbery, and the 28 year sentence. Thank you very much. Your Honor. First to your question, Justice Hyman about what obligation the judge has, I would direct your honor to people versus Fisher, which says that a judge when faced with a defendant who is suggesting representing himself, the judge must ask to confirm, do you want to represent yourself, and that trying to talk them out of it is not enough. Regarding the state's point that this came that this request in this case came too late. First, we're at a new stage of the proceedings. Second, the Burton case relied on by the state. There, it was affirmed the denial of self representation because the defendant sought to represent himself, literally in the middle of a capital sentencing hearing, which is not at all what we have in this case. And then to the is that I mean, I'm Burton, which the state has mentioned several times. And as a Supreme Court case, obviously, is there anything other than that difference with regard to the nature of the sentencing capital says that you would distinguish it from from our case. Before, I mean, the defendant, there was also the purpose of him asking to represent himself was to see certain records that counsel had, but that were, he was not allowed to see unless he represented himself is something also that distinguishes it there. But the largest would be the timing that it came literally in the middle of a sentencing hearing. I'm not sure if that's what your honor was looking for, if I misunderstood you were asking. Oh, no, no, that's helpful. Okay. And I would also note that the people versus Gorga case does say that it while it might be okay. I mean, in that case, there was a disruption because counsel or I'm sorry, the defendant wanted to represent himself in the middle of arguments and attempt to reopen the proof. The court there did endorse the idea that a defendant could seek to represent himself at a post trial motion hearing or sentencing. And to the excessive sentence argument, I would reiterate the statement that the judge, in fact, in the supplemental, the second supplemental record, she does say she's finds no mitigation. When there was in fact mitigation here and her findings in her findings, she mentions aggravation, she mentions no, none of the non statutory mitigators and this court in people versus Markowitz reversed where the judge there refused to consider non statutory mitigation, of which we certainly had in this case, and just just affirm like we said in our reply brief, the near maximum sentence simply doesn't show a balancing of retributive versus rehabilitative principles that are supposed to be at work in such a hearing. Well, since I listed the aggravating factors, why don't you take a minute to list what you believe to be the mitigating mitigating factors? Sure. We have a defendant here who has long suffered from mental health problems and mental illnesses. He had a very unstable young life. He lived on the streets for a time because he was kicked out of his own home. He's had addiction, but he struggled to find treatment for he earned a GED tried to work, and he also avoided gangs. So there is plenty of non statutory mitigation present in this case, Your Honor. If you have no other questions, I'll stand on my briefs. Thank you very much. Appreciate your arguments both sides. Nice job by both of you. Appreciate it. And we'll take this case under advisement. May you both have a pleasant afternoon. Thank you very much.